Green, Judge,
delivered the opinion:
The plaintiff is the receiver of the Cape May Hotel Company, which in 1918 leased the building known as “Hotel *402 Cape May” to the defendant for a specified rental and for a term which was extended by leases subsequently made to August 23, 1919. The lease covered not only the building but the premises appurtenant thereto, including some cottages and all furniture and fixtures contained in the buildings leased to be used as a general hospital for the United States Army. The leases contained the following provision:
“That the lessee agrees to maintain said premises, except necessary repairs to outside of main building, during the period of its occupancy and the les: or grants to the lessee the right to make such alterations to the interior of the building, not such as to affect the permanent character of the building, as may be desired, at the expense of said lessee.”
At the time the Government took possession of the hotel and cottages under the lease the hotel was completely furnished in the manner shown in the findings. The cottages were in fairly good condition but the hotel had been allowed to deteriorate. The plumbing had become defective; the steam heat pipe lines were badly corroded, and in many places water leaked into the rooms. The drain pipes were stopped up, and at times water covered the kitchen floor and stood in the elevator pit. The refrigerating system had to be repaired before it could be used by the Government. In some of the rooms water had drifted in through the windows and sills and disintegrated the walls, and some of the paper on the rooms was loose and in bad condition. The furniture and dining room and kitchen fixtures and utensils had been in use for about 10 years, or since the hotel was originally built. No new furniture had been bought except just enough to replace some which was beyond repair, but the furniture was in fairly good condition considering the time it had been in use when the Government took possession of the hotel and cottages.
When the Government took possession it spent approximately $46,000 making repairs, improvements, and alterations to the main building. About half of this sum was spent in making changes necessary to convert the building into a hospital. While the Government occupied the hotel and cottages, the building, furniture, and equipment were used very roughly by the patients in the hospital. Various articles were destroyed, broken, and injured, paper torn *403 from the walls, and plaster badly damaged, table cloths and table covers lost and misplaced as well as silverware. Initials of patients were cut on the furniture and window and door facings, and much of the furniture scratched and damaged. Some of it was completely destroyed. The Government built partitions in the various parts of the building and when these were removed the floors and walls were damaged. The evidence, however, does not show how much furniture was-destroyed and how much was damaged, nor to what extent the hotel and cottages were damaged by the use of the Government, except as it may be derived from the cost of repairs, and restorations, but it does appear that the building and equipment were in worse condition at the time the Government surrendered possession of the buildings than they were when it took possession of the same.
At the time the Government surrendered possession of the hotel and cottages practically all of the rooms had to be repapered, new screens had to be bought to take the place of the screens which had been destroyed or were missing, new furniture and equipment had to be obtained in order to take the place of furniture and equipment destroyed, and other furniture had to be repaired. Practically all of the rooms had to be gone over and the walls and floors repaired to some extent.
Under the covenant contained in the leases, as set out above, the Government had contracted to maintain the premises during the period of occupancy, except the necessary repairs to the outside of the main building, and while it had a right to make alterations in the interior of the building, we think a fair construction of the covenant required that such alterations should not affect the permanent character of the building, and where they either were left remaining or were removed in such a way as to damage the building the defendant became liable for the expense of restoration, if it appears from the evidence.
The testimony in the case is very conflicting, but it leaves no doubt but that the owners of the hotel sustained damages for which they would be entitled to compensation if the amount thereof is established by the evidence. The difficulty *404 in deciding the case arises from the fact that the testimony is so indefinite and uncertain as to the amount of damage which was done the property that a serious question arises as to whether any satisfactory evidence has been introduced under which the court may reach a judgment in plaintiff’s favor. There is no direct evidence as to the value of the hotel when the Government took it over, or as to its value when the Government surrendered possession of it, and the same is true with reference to the furniture. As stated above, the hotel was not in good repair in many respects. The Government made repairs which were beneficial and some changes that were injurious to the property for its future use, if it was to be used as a hotel. A large amount of injury was done to the building and equipment and the most of it could not have resulted from ordinary wear and tear. The Government was obliged to maintain the building under the lease. So far as the furniture was concerned, it was only bound to return the same in as good condition as when it was taken over, less a reasonable allowance for wear.
As above stated, the provisions .of the lease required the defendant to maintain the premises. This, we think, meant that they should be turned back in reasonably good condition for hotel use and not for hospital purposes. It is insisted on behalf of the defendant that the defendant was not liable for the damage done to the furniture and equipment. It is true the lease did not make any provision in this respect, but we thinl?: the defendant was bound to turn back all of the furniture and equipment in as good condition as when received with the exception of such loss or injury as might result from reasonable and ordinary hospital use, and we can see no reason why ordinary hospital use should be more injurious to equipment than its use in connection with a hotel.
It is strenuously insisted by counsel for plaintiff that it has ■shown by a preponderance of the testimony that the fair and reasonable cost of repairing and replacing the various articles of furnishings damaged, broken, or missing, and of repapering and repainting, etc., the interior of the building was over $100,000, while the cost of these items as found by the com *405 missioner was $56,228.73. But an examination of the testimony of these witnesses satisfies us that they fail to make proper allowance for the fact that no furniture of the hotel had been replaced during the ten years of its use, nor is any allowance made for reasonable wear and tear while the Government was in possession. There is no evidence to show the length of the period which it might be expected that hotel furniture and equipment could be used before it would be necessary to replace it to keep the furnishings in good condition, but we are satisfied that the amount testified to by the witnesses for the plaintiff would have put the hotel and its equipment in much better condition than they were when the Government took them over. On the other hand, we think the various amounts of cost and the expense of repairs and replacements found by the commissioner under the respective items as listed in his report are substantially correct. We have adopted these findings, but it will be observed as to some of the items of hotel equipment no allowance was made for depreciation and ordinary wear. This would be slight on some of these articles. On others it would be substantial, and would have been affected by the condition of these articles when the Government took over the premises and their condition when it gave up possession thereof. As examples of the latter class, window shades and screens might be mentioned. The commissioner found that the total expense of the several items of repair, replacement, and restoration was $56,228.73. Making a further allowance for depreciation and wear in the manner above specified, we have reduced the total to $55,000, which we think can be accepted by the court as the least amount of damage which the plaintiff sustained under the evidence. In this way, notwithstanding the somewhat unsatisfactory nature of the testimony, we conclude that under the evidence and the provisions of the lease, the plaintiff is entitled to recover $55,000, and judgment will be rendered accordingly.
Whaley, Judge; Williams, Judge-, Littleton, Judge-, and Booth, Chief Justice, concur.